**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEITH LAMONT BURLEY, JR.,            )
                                     )
            Plaintiff,               )        Civil Action No. 2:20-1805
                                     )
            v.                       )        Magistrate Judge Patricia L Dodge
                                     )
NICOLE PARRA, *et. al.*,             )
                                     )
            Defendants.              )

<u>**MEMORANDUM ORDER**</u>

For the reasons that follow, the Court will grant Defendants' Joint Motion to Stay this civil action until the conclusion of Plaintiff's state criminal case. (ECF 71.) The Court will also dismiss without prejudice Defendants' motions to dismiss (ECF 56, 58 and 60) and Plaintiff's motions for a hearing and a ruling on his previous request for discovery and the appointment of an independent expert. (ECF 75, 77.)

**I.      Relevant Background**

Plaintiff Keith Lamont Burley, Jr. is a state prisoner who is incarcerated at SCI Forest. He is proceeding *pro se* in this civil action.

In 1999, Plaintiff pleaded guilty to charges including murder and robbery. He was released to parole after he served approximately twenty years in prison on those convictions. While on parole in July 2019, Plaintiff was arrested and charged with criminal homicide and numerous related crimes for the fatal stabbing of Mark Mason, an eight-year-old boy. Plaintiff is awaiting trial on those charges in the Court of Common Pleas of Lawrence County at Criminal Case No. CP-

1

37-CR-730-2019.[1]  His criminal trial is currently scheduled to commence in January 2022.

Following his arrest in July 2019, Plaintiff was incarcerated in the Lawrence County Corrections ("LCC"). Approximately one year later, in July 2020, Plaintiff was transferred to the custody of the Pennsylvania Department of Corrections ("DOC") as a parole violator and incarcerated at a state correctional institution. The DOC assigned him to be incarcerated at SCI Forest.

After Mark Mason's fatal stabbing, legislation was proposed in the Pennsylvania legislature related to the parole requirements for violent offenders. House Bill 1855, later reintroduced as House Bill 146, is known as Markie's Law. If it becomes law, Markie's Law would postpone parole considerations for inmates convicted of a violent offense while incarcerated. The Pennsylvania House of Representatives voted to pass Markie's Law and the bill was referred to the Judiciary Committee of the Pennsylvania Senate on March 18, 2021. https://www.legis.state.pa.us/cfdocs/legis/home/bills (last visited Oct. 6, 2021.)

Plaintiff commenced this civil action in October 2020 with the filing of the original complaint (ECF 1-2) in the Court of Common Pleas of Lawrence County. Plaintiff named as defendant Nicole Parra, a health care provider at the LCC, and brought claims against her related to her decision to place him on suicide watch when he entered the LCC on July 11, 2019.

In November 2020, Parra removed this civil action to this Court. In May 2021, Plaintiff filed the Second Amended Complaint (ECF 34), which is the operative pleading. In addition to Parra, the Second Amended Complaint names as defendants: Lawrence County District Attorney

---

1 The Court takes judicial notice of the Common Pleas Court's docket in Criminal Case No. CP-37-CR-730-2019, which is available to the public online at https://ujsportal.pacourts.us (last visited Oct. 6, 2021.)

Joshua D. Lamancusa; Judge Dominick Motto, the state court judge who is presiding over Plaintiff's criminal proceeding; Brian Covert, the Warden of the LCC; Jason Hilton, the Deputy Warden of the LCC; Nicholas Zarilla, a former LCC mailroom employee; Vince Martwinski, a detective involved in Plaintiff's booking at the LCC and who allegedly investigated Plaintiff's complaints about his conditions of confinement there; and, members of the LCC's Board (former County Controller Gettings, County Commissioners Daniel Vogler, Moran Boyd and Loretta Spielvogel, and Lawrence County Sheriff Perry Qualiero).[2]

The Second Amended Complaint brings constitutional tort claims against Defendants under 42 U.S.C. § 1983. Some of the claims asserted in the Second Amended Complaint relate to Plaintiff's conditions of confinement at the LCC (his initial placement on suicide watch, the delivery of his mail, an alleged lockdown without a hearing and his access to medical care, the law library and religious items and/or accommodations). Many of these claims, however, as well as other claims asserted in the Second Amended Complaint, are related to Plaintiff's ongoing state criminal proceeding.[3]  For example, Plaintiff alleges that:

---

[2] Judge Motto and District Attorney Lamancusa are also members of the LCC's Board.

[3] Plaintiff also claims that, if enacted, Markie's Law would violate his rights under the Fourteenth Amendment and the *Ex Post Facto* and Double Jeopardy Clauses. As relief for these claims, he seeks an order enjoining the passage of Markie's Law into law. (ECF 34 ¶¶ 67-68, 74.) Plaintiff cannot proceed with these claims in this civil action. None of the defendants named in the Second Amended Complaint are a proper party to a lawsuit seeking to enjoin the passage of Markie's Law. The Court further notes that in January 2021 Plaintiff filed a civil rights complaint in the United States District Court for the Middle District of Pennsylvania at Civil Action No. 1:20-cv-72 against Aaron Bernstine, a member of the Pennsylvania House of Representatives. Plaintiff claimed that Bernstine violated his federal and state constitutional rights and various state laws by sponsoring and promoting Markie's Law. Plaintiff subsequently sought to amend his complaint and add District Attorney Lamancusa as a defendant in that lawsuit, alleging that he colluded with Bernstine to defame Plaintiff in promoting Markie's Law and engaged in other violations of Plaintiff's constitutional rights. The Middle District Court dismissed Plaintiff's complaint under *Footnote continued on next page…*

- Zarilla, who is "affirmatively linked" with Judge Motto and District Attorney Lamancusa, withheld, destroyed, read and/or photocopied his legal mail for the purpose of interfering with Plaintiff's Sixth Amendment right to counsel and with the intent of compromising "the integrity of the discovery process" in his criminal case in order to "prejudice" his defense. (ECF 34 ¶¶ 17-25.)

- Parra conducted cell door visits with Plaintiff for the improper purpose of obtaining privileged information about his criminal case. (*Id.* ¶¶ 13-14.)

- one or more of the defendants deliberately interfered with Plaintiff's Sixth Amendment right to counsel, read privileged mail sent to him from defense attorney, committed "*Brady* violations" and tainted the discovery process in his criminal proceeding to such an extent that they have in actuality "fabricated false evidence" against him, and subjected him to a retaliatory transfer to SCI Forest in order to violate his rights to a speedy trial and interfere with his right to effective assistance of counsel. (*Id.* ¶¶ 22-29, 34, 73; *see also* ECF 69 p. 8.)

- the Commonwealth did not prove a *prima facie* case on the criminal charges against Plaintiff and he is innocent of killing Mark Mason. (*Id.* ¶¶ 51-52, 61-62.)

- District Attorney Lamancusa has engaged in malicious prosecution and abuse of process. (*Id.* pp. 30-31.)

- District Attorney Lamancusa defamed Plaintiff for calling him "depraved" during a press conference about Markie's Law. (*Id.* ¶¶ 63, p. 30.)

- As a result of District Attorney Lamancusa's alleged malicious prosecution of Plaintiff and other improper actions, Plaintiff was improperly arrested as a parole violator and must attend the "Batterer's Group" treatment program at SCI Forest. (*Id.* ¶¶ 64-65.)

As relief, Plaintiff seeks compensatory, nominal and punitive damages against each

---

the screening provisions of 28 U.S.C. § 1915A because Bernstine is entitled to legislative immunity on claims based on his sponsoring and promotion of Markie's Law, and because Plaintiff otherwise failed to state a claim against Bernstine. The Middle District Court also declined to exercise supplemental jurisdiction over Plaintiff's state law claims and denied his motion to amend his complaint and add District Attorney Lamancusa as a defendant. The United States Court of Appeals for the Third Circuit affirmed the Middle District Court's decision on August 23, 2021. *Burley v. Bernstine*, No. 21-1956, — F. App'x — , 2021 WL 3719224 (3d Cir. Aug. 23, 2021).

defendant and declaratory relief.[4]

Pending before the Court is Defendants' Joint Motion to Stay (ECF 71), which Plaintiff opposes (ECF 81). Also pending before the Court are: (1) Plaintiff's motion (ECF 75) for a hearing; (2) Plaintiff's motion (ECF 77) for appointment of an "independent expert who can testify as to the 'psychological' harms of mistreatment and abuse" he sustained at the LCC, and for a ruling on his requests for discovery (which the Court previously dismissed as premature, *see* ECF 29); and, (3) motions to dismiss filed by each Defendant except for Parra. (ECF 56, 58 and 60). Because the Court is granting Defendants' Joint Motion to Stay, the Court will dismiss these other pending motions without prejudice.

## II.    Discussion

In Defendant's Joint Motion (ECF 71), they move for a stay of this civil action until the completion of Plaintiff's state criminal proceedings because many of the claims asserted in the Second Amended Complaint relate to that ongoing criminal proceeding. It has long been recognized that district courts retain the discretion to control the orderly disposition of cases on their docket through the entry of a stay. *See, e.g., Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983) ("'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time

---

4 Plaintiff also seeks injunctive relief in the form of an order directing that: (1) he be provided with medical treatment for his eyes, which he alleges were injured when he was exposed to constant artificial lighting while on suicide watch and during lockdown at the LCC; and (2) he be removed from the "Batterer's Group" treatment program at SCI Forest. (ECF No. 34, ¶ 74.) Plaintiff cannot obtain that injunctive relief in this civil action since he was transferred from the LCC before he initiated this lawsuit, is in the custody of the DOC at SCI Forest, and none of the defendants are employees or officials with SCI Forest or the DOC. Therefore, none of the defendants can provide him with the injunctive relief he seeks.

and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise

of judgment, which must weigh competing interests and maintain an even balance.'") (quoting

*Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *see also Ford Motor Credit Co. v.*

*Chiorazzo*, 529 F. Supp. 2d 535, 541-42 (D.N.J. 2008) ("The power to stay a proceeding is derived

from the inherent power of a court to efficiently manage its own docket.").

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a state prisoner convicted of voluntary

manslaughter brought a civil rights action against prosecutors and a police investigator, asserting

that the defendants engaged in an unlawful, unreasonable and arbitrary investigation leading to

Heck's arrest; knowingly destroyed evidence that could have proven Heck's innocence, and caused

an illegal voice identification procedure to be used at his state trial. 512 U.S. at 479. The Supreme

Court rebuffed such an effort and held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus,
> 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983. Thus,
> when a state prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the invalidity
> of his conviction or sentence; if it would, the complaint must be dismissed unless
> the plaintiff can demonstrate that the conviction or sentence has already been
> invalidated. But if the district court determines that the plaintiff's action, even if
> successful, will not demonstrate the invalidity of any outstanding criminal
> judgment against the plaintiff, the action should be allowed to proceed, in the
> absence of some other bar to the suit.

*Id.* at 486-87 (footnotes omitted).

Where, as is the case here, the plaintiff in a § 1983 action has yet to be convicted and some

of his civil claims are closely related to his criminal proceedings, the district court should typically

6

stay the civil action pending the resolution of the state criminal proceeding. Then, once the stay is

lifted, the district court can determine the impact of the *Heck* rule to the plaintiff's civil claims. As

the Supreme Court explained in *Wallace v. Kato*, 549 U.S. 384 (2007):

> If a plaintiff files a false-arrest claim before he has been convicted (or files
> any other claim related to rulings that will likely be made in a pending or anticipated
> criminal trial), it is within the power of the district court, and in accord with
> common practice, to stay the civil action until the criminal case or the likelihood of
> a criminal case is ended. *See* [*Heck*, 512 U.S. at 487-88, n.8] (noting that
> "abstention may be an appropriate response to the parallel state-court
> proceedings"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712,
> 135 L.Ed.2d 1 (1996). If the plaintiff is ultimately convicted, and if the stayed civil
> suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil
> action will proceed, absent some other bar to suit. *Edwards v. Balisok*, 520 U.S.
> 641, 649, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck*, 512 U.S., at 487, 114
> S.Ct. 2364.

549 U.S. at 393-94.

Here, if Plaintiff is ultimately convicted, some of the claims asserted in the Second

Amended Complaint may impugn that conviction and, as a result, the Supreme Court's decision

in *Heck* will require the dismissal of those claims. Accordingly, this civil action should be stayed

"until [Plaintiff's] criminal case … is ended." *Id.*; *see also McKinney v. Prosecutor Cty.*

*Prosecutors Office*, 612 Fed. App'x 62, 65-66 (3d Cir. 2015) (noting that because the *Heck* bar

does not apply to anticipated future convictions, the proper course of action in a situation where a

pre-trial detainee files § 1983 malicious prosecution claim is for the district court to stay the federal

case until the end of plaintiff's criminal proceedings); *Hockett v. Wilkinsburg Police Dep't*,

No. 2:18-cv-1213, 2019 WL 1779166, at *1 (W.D. Pa. Apr. 23, 2019) (staying plaintiff's § 1983

action, in which he alleged unreasonable search and seizure, false imprisonment, unlawful arrest,

conspiracy, ineffective assistance of counsel, assault and battery, malicious prosecution, abuse of

office and violations due process, until the criminal proceedings against him concluded); *Noble v.*

*City of Erie*, No. 1:18-cv-006, 2018 WL 4963614, at *2 (W.D. Pa. Oct. 15, 2018) (staying plaintiff's § 1983 action because "[n]ot doing so would cause the Court to inappropriately speculate about whether [his] prosecution ... will result in a conviction, and whether the impending civil action will impugn that verdict.") (internal citation and quotation omitted).

Relatedly, a stay is also appropriate at this time in accordance with the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971), in which the Supreme Court explained that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances. *Satcher v. Armstead*, No. 21-cv-0919, 2021 WL 2012553, at *3 (E.D. Pa. May 20, 2021) (abstaining from entertaining state prisoner's § 1983 claims and staying his federal civil action until the final conclusion of his state criminal case). *Younger* abstention will apply when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)).

These requirements are satisfied in this case. There is an ongoing state judicial proceeding against Plaintiff which undoubtedly implicates the important state interests of enforcement of its criminal laws. Additionally, Plaintiff has the opportunity to raise in his state criminal proceeding federal constitutional claims pertaining to the alleged prosecutorial misconduct, violation of his right to a speedy trial, and interference with his discovery and his right to counsel.

The Court notes that "*Younger* abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of

harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). None of these factors are present here. Thus, Plaintiff's claims concerning his ongoing criminal proceedings satisfy the requirements of abstention.

Plaintiff argues that the Court should deny Defendants' Joint Motion to Stay because his "pre-trial rights … cannot be vindicated post-trial." (ECF 81 p. 2.) He contends that "[e]ven if he can be vindicated through reversal of an improperly obtained conviction or unfair trial, it would come too late" because "[he] has a right to avoid vindictive prosecution and prosecutorial abuse." (*Id.*)

These arguments undermine Plaintiff's contention that a stay is not appropriate. His assertions demonstrate that the purpose of this civil action, at least in part, is to "protect" him from what he asserts is an "unfair trial." Plaintiff cannot seek such relief in a § 1983 action, however. Rather, a federal court could enjoin his state criminal trial in a federal habeas action and only in very limited circumstances, such as upon a showing that his upcoming trial violates his rights under the Double Jeopardy Clause, *see, e.g., United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir. 1975), or he is being deprived of his constitutional right to a speedy trial, *see, e.g., Braden v. Judicial Circuit Court of Kentucky*, 410 U.S. 484, 492-93 (1973).

Notably, Plaintiff cites to a § 2241 habeas case—*Bean v. Matteucci*, 986 F.3d 1128 (9th Cir. 2021)—in support of his contention that the Court should deny Defendants' Joint Motion to Stay. He also acknowledges in his Motion for a Hearing (ECF 75) that some of his claims are habeas claims. Plaintiff cannot avoid the state-court exhaustion requirement applicable to habeas

cases[5] by improperly seeking to enjoin his state trial in a § 1983 action, nor can he litigate habeas claims in a § 1983 action.

## III.   ORDER

Based upon the foregoing, the following ORDER is entered:

1. Defendant's Joint Motion to Stay (ECF 71) is GRANTED. This civil action is stayed and administratively closed[6] until the completion of Plaintiff's state criminal case, including, in the event he is convicted, any direct appeal;

2. Within 30 days of the conclusion of Plaintiff's state criminal proceeding, including any direct appeal, Defendants shall file a joint motion to lift the stay;

3. The Motions to Dismiss the Second Amended Complaint filed by Judge Motto (ECF 60), Zarilla (ECF 56), and District Attorney Lamancusa, Boyd, Covert, Gettings, Hilton, Martwinski, Qualiero, Spielvogel, Vogler and Judge Motto (in his role as member of the LCC's Board) (ECF 58) are DISMISSED without prejudice to Defendants' right to refile such motions after the stay in this case is lifted; and

4. Plaintiff's Motion for a Hearing (ECF 75) and Motion in Request for Ruling and an Independent Expert (ECF 77) are DISMISSED without prejudice to Plaintiff's right to

---

5 The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 842-49 (1999); *Parker v. Kelchner*, 429 F.3d 58, 61 (3d Cir. 2005) ("Exhaustion addresses federalism and comity concerns by affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.") (internal citations and quotations omitted). "A state defendant seeking pre-trial federal habeas relief [under § 2241] must first exhaust his claims in state court." *Breakiron v. Wetzel*, No. 2:14-cv-570, 2015 WL 451167, at *7 (W.D. Pa. Feb. 3, 2015) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moore v. DeYoung*, 515 F.2d 437, 441 (3d Cir. 1975)).

6 An Order administratively closing a case is not a "dismissal" on the merits. Rather, it is an "administrative convenience" that permits the Court to remove the case from its active calendar until such time as it is ripe for reactivation or adjudication. *Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118, 127 (3d Cir. 2004) (endorsing the judicious use of administrative closures) (quoting source omitted). Because an administration termination "has no legal significance beyond removing the case from [the Court's] active docket," it does not prejudice the substantive rights of the parties. *Massey v. Pfeifer*, No. 1:17-cv-173, 2017 WL 6729366, at *1 (W.D. Pa. Oct. 27, 2017).

refile such motions after the stay in this case is lifted.

SO ORDERED this 6th day of October, 2021.

/s/ Patricia L Dodge
PATRICIA L DODGE
UNITED STATES MAGISTRATE JUDGE