IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH LAMONT BURLEY, JR.,  )
             )
   Plaintiff,    )   Civil Action No. 2:20-cv-1805
             )
             )
   v.       )
             )   Magistrate Judge Patricia L. Dodge
             )
NICOLE PARRA, et al.,   )
             )
   Defendants.   )

**MEMORANDUM OPINION**[1]

Presently before the Court are two motions to dismiss: one filed by Defendants Brian Covert, Jason Hilton, Joshua D. Lamancusa, Dominick Motto, Loretta Spielvogel, Qualiero Perry, Gettings, Morgan Boyd, Daniel Volger, and Vincent Martwinski ("the Lawrence County Defendants") (ECF No. 97); and one filed by Defendant Nicholas Zarilla (ECF No. 99).

I.  **Relevant Procedural History**

Plaintiff Keith Lamont Burley, Jr., an inmate at the State Correctional Institution at Coal Township, brings this *pro se* civil rights action under 42 U.S.C. § 1983 against the moving defendants and Nicole Parra.[2] All defendants are named in both their individual and official capacities. The operative complaint is the Second Amended Complaint docketed on April 23, 2021. (ECF No. 34.)

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] Parra filed an Answer to the operative Second Amended Complaint. (ECF No. 35.) The claims against Parra are not discussed in this opinion.

This action was stayed on October 6, 2021, until the completion of state criminal proceedings against Plaintiff, which proceedings are related to certain claims raised by Plaintiff in this case. (ECF No. 83.) In his criminal case, Plaintiff was convicted on August 28, 2023, of, among other things, murder of the first degree, in the Court of Common Pleas of Lawrence County at docket number CP-37-CR-0000730-2019. He was sentenced to life imprisonment on September 19, 2023. The Superior Court of Pennsylvania affirmed the judgment of sentence on June 25, 2025. *Commonwealth v. Burley*, 343 A.3d 238 (Pa. Super. 2025). The stay in this case was lifted on July 28, 2025. (ECF No. 95.)

The Lawrence County Defendants filed a Motion to Dismiss and a Brief in Support on August 11, 2025. (ECF Nos. 97-98.) Plaintiff filed a Brief in Opposition to the Motion to Dismiss on November 12, 2025.[3] (ECF No. 106.)

Zarilla also filed a Motion to Dismiss and a Brief in Support on August 11, 2025. (ECF Nos. 99-100.) Plaintiff filed a Brief in Opposition to that motion on November 14, 2025. (ECF No. 107.)

Both Motions are ready for resolution.

II.     **Facts**

Plaintiff makes the following relevant factual allegations in the Second Amended Complaint in support of the host of claims asserted against the Lawrence County Defendants and Zarilla.

---

[3] In that Brief, Plaintiff withdrew ex post facto claims he raised in the Second Amended Complaint related to "Markie's Law," a bill named after the victim in Plaintiff's criminal case. (ECF No. 106 at 1.) Markie's Law was not enacted in Pennsylvania.

### A. **Mail Issues**

At relevant times hereto, Plaintiff was incarcerated in the Lawrence County Jail. He alleges that between January 2020 and July 17, 2020,[4] Zarilla, then a mailroom employee at the Lawrence County Jail, deliberately withheld Plaintiff's mail from him. (ECF No. 34 ¶ 17.) On June 17, 2020, after hearing Plaintiff state that he "did not trust the mailbox," Deputy Warden Jason Hilton used a "master key" and opened a locker/safe where Plaintiff's mail had been collected. (*Id.* ¶¶ 18-19.) Deputy Warden Hilton later gave Plaintiff eight pieces of legal mail. (*Id.* ¶ 18.)

Between March 2020 and June 2020, when Plaintiff's only means to communicate with his attorney was through the mail, his legal mail was repeatedly opened, read, photocopied, and withheld from him without his permission. (*Id.* ¶ 22.) A package of legal mail is still missing, as are two Qurans that were mailed to Plaintiff but not delivered to him. (*Id.* ¶¶ 20-21.)

On June 17, 2020, when Hilton delivered the eight pieces of legal mail to Plaintiff, he refused to give Plaintiff all of his discovery, placing some of it in a box. (*Id.* ¶ 26.) Through his counselor, Plaintiff sent a fax to the Lawrence County District Attorney's Office asking why Hilton was in possession of discovery in Plaintiff's criminal case when Hilton was the subject of a criminal complaint Plaintiff filed on June 1, 2020. (*Id.* ¶ 27.) In response, Judge Dominick Motto, then a judge of the Court of Common Pleas of Lawrence County, issued an order directing Plaintiff's counsel to take appropriate action as he saw fit. (*Id.* ¶ 28.) Plaintiff's counsel obtained video of Hilton's actions. (*Id.*)

On June 18, 2020, Loretta Spielvogel, a Lawrence County Prison Board Member and County Commissioner, entered the Lawrence County Jail looking for "shredded mail." (*Id.* ¶ 29.)

---

[4] Based on other allegations in the Second Amended Complaint, it appears that Plaintiff may have meant to reference June 17, 2020, rather than July 17, 2020.

On June 19, 2020, Plaintiff's counselor called the Pennsylvania State Police to report abuse she had witnessed to Plaintiff's mail and his person. (*Id.* ¶ 48.) That afternoon, Investigator Vince Martwinski came the Lawrence County Jail to interview Plaintiff. (*Id.* ¶ 49.) He claimed he would forward the mail complaint to the Postmaster General and that he would return to conduct a recorded interview about Plaintiff's other complaints but failed to do so. (*Id.*)

### B. Cell Conditions

Between January 2020 and April 2020, Hilton had Plaintiff placed in Cell #27 in the HD Housing Unit. (*Id.* ¶ 30.) This cell was extremely cold. (*Id.*) It was located under a television which played at maximum volume each day until 4:00 a.m. (*Id.*) The constant artificial light in the dayroom, which Hilton refused to turn off, also affected his cell. (*Id.*)

Plaintiff informed multiple corrections officers that he was suffering with sleep deprivation due to the conditions in Cell #27. (*Id.* ¶ 31.) These officers attempted to arrange for Plaintiff to be moved to another cell, but Hinton refused to do so. (*Id.*) When Plaintiff became severely disoriented with vision impairment and ringing in his ears, he refused to "lock back" in the cell. (*Id.*) A captain and Plaintiff's counselor moved Plaintiff at that time to a cell away from the television. (*Id.*)

Hilton also locked Plaintiff down between August 2019 and September 2019 for unspecified excessive amounts of time without a hearing or any infractions. (*Id.* ¶ 36.) When Warden Covert was informed of this practice, he sent Plaintiff to the Mercer County Jail. (*Id.*)

### C. Legal Resources Interference

Covert and Hilton became visibly upset after Plaintiff filed criminal complaints against both of them and Parra. (*Id.* ¶ 38.) Between August 2019 and September 2019, Covert and Hilton had Captain Mahlmister confiscate a Black's Law Dictionary from Plaintiff. (*Id.* ¶ 39.) They also

removed the "mobile law library" which contained law books and access to Lexis Nexis. (*Id.*) They denied Plaintiff access to the law library for the duration of his pre-trial detention in order to prevent him from learning how to file a § 1983 claim. (*Id.* ¶ 40.) They also denied Plaintiff a pen, paper, desk, law books, legal assistance, and hygiene products. (*Id.* ¶ 41.) After Plaintiff's counselor faxed legal documents to the court for him, Covert issued a memo that legal mail could no longer be faxed. (*Id.*)

### D. Religious Accommodations

Between January 2020 and July 2020, Covert and Hilton denied Plaintiff accommodations to pray as a Muslim. (*Id.* ¶ 42.) When Plaintiff sought to purchase a prayer rug in July 2020, Hilton told Plaintiff to "pray on toilet paper." (*Id.*) Covert also refused to allow Plaintiff to purchase a halal meal for his feast at the end of Ramadan. (*Id.*) In June 2020, Plaintiff sought accommodation for a feast meal. Covert claimed to have called a state prison to inquire how such feasts were conducted but then admitted he did not make such a call. (*Id.*) Plaintiff received turkey that was prepared for the Memorial Day meal. (*Id.*)

### E. Fee Assessed

On July 11, 2019, when Plaintiff arrived at the Lawrence County Jail, a $25 fee was assessed to him. (*Id.* ¶ 44.) "Secretary Rhonda" told Plaintiff this was done based on a practice instituted by the Prison Board. (*Id.*) Rhonda also told Plaintiff he should not have been assessed this fee because he had been originally "booked" in Ohio, but Hilton would not let Rhonda refund the $25. (*Id.*)

### F. Prison Board

In April 2020, the Prison Board was informed by "Captain Fanno" that Plaintiff was being mistreated. (*Id.* ¶ 46.) Plaintiff informed Board member Spielvogel that he was being mistreated.

(*Id.*) He also sent correspondence to Board member Joshua D. Lamancusa concerning the legal mail problems he experienced. (*Id.*) No member of the Board took any action. (*Id.*)

### G.  Criminal Case

On August 29, 2019, Plaintiff appeared for a preliminary hearing in his criminal case. (*Id.* ¶ 50.) No accuser was present. (*Id.*) The Commonwealth did not establish a prima facie case, but Plaintiff was bound over for trial on four charges. (*Id.* ¶¶ 50-51.)

In September 2019, Lawrence County District Attorney Lamancusa held a press conference promoting "Markie's Law." (*Id.* ¶¶ 53-54.) At that time, Lamancusa described Plaintiff as "depraved." (*Id.* ¶ 63.)

### H.  Transfer

On July 17, 2020, at 6:00 a.m., Plaintiff was transferred to from the Lawrence County Jail to S.C.I. Greene without notice. (*Id.* ¶ 72) Once there, he was placed in a hard cell under constant artificial light. (*Id.*)

## III.    Legal Standards

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in

considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, the filings of a pro se party must be liberally construed and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)) (internal quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Moreover, the court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## IV.    Analysis

### A.    Claims against Covert and Hilton

The Lawrence County Defendants assert that the claims against Covert and Hilton are barred based on the doctrine of res judicata. Plaintiff has not responded to this argument.[5]

By way of background, Plaintiff commenced what he styled as a mandamus action in the Court of Common Pleas of Lawrence County against Covert, Hilton, and Zarilla at Civil Action No. 10386-20.[6] In his Amended Complaint, he raised claims stemming from his incarceration in the Lawrence County Jail from July to September 2019 and January to July 2020. These claims included denial of access to the law library and legal materials; withholding of his legal mail; opening, reading, and photocopying his legal mail; psychological torture during his housing in the HD unit between January and April 2020 by the use of artificial light and sound; usurpation of a

---

[5] In fact, Plaintiff does not respond to any of Defendants' arguments in their motion to dismiss. Instead, he merely cites the standard of review for a motion to dismiss and the less stringent standards for *pro se* litigants. (ECF Nos. 106, 107.)

[6] The Court takes judicial notice of this action and the pleadings, orders, and other docket entries in that lawsuit.

fabricated $25 booking fee; religious discrimination based on the denial of an end-of-Ramadan feast; and retaliation by transferring Plaintiff without a hearing. (ECF No. 98-2 at 5-7.)

In the opinion of Judge Hodge of the Court of Common Pleas of Lawrence County dated March 23, 2021, (ECF No. 98-2) that granted defendants' preliminary objections, Plaintiff's claims were dismissed with prejudice. (*Id.* at 2.) The court found that all of Plaintiff's claims against Hilton and Covert in the Amended Complaint were legally insufficient. (*Id.* at 10-15.) This included claims that Hilton and Covert: (1) denied Plaintiff access to the law library and law books; (2) destroyed and withheld his mail; (3) open, read and photocopied Plaintiff's mail; (4) subjected Plaintiff to psychological torture while in the HD Unit with the use of artificial light and sound; (5) negligently created customs and were negligent in failing to remedy violations and supervising subordinates; (6) usurped a fabricated booking fee of $25.00; (7) engaged in religious discrimination by denying a feast at the end of Ramadan; and (8) retaliated against him by transferring him to another correctional institution without a hearing. The dismissal of these claims with prejudice was affirmed by the Pennsylvania Commonwealth Court. *Burley v. Hilton*, 282 A.3d 395 (Pa. Commw. Ct. 2022) (unpublished memorandum).

The claims adjudicated in the Court of Common Pleas of Lawrence County are precisely the same as those that have been asserted against Covert and Hilton in this case in the Second Amended Complaint.[7] There has been a final judgment on the merits with respect to these claims that involves the same parties. As such, all of these claims are barred by the doctrine of res judicata. As the United States Court of Appeals for the Third Circuit has explained:

---

[7] As Defendants note, Plaintiff's statement in his Amended Complaint that the Lawrence County action only sought an injunction for the primary purpose of return of his property (ECF No. 33-1 at 12) is demonstrably false.

> Res judicata requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341-42 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). Notably, "[t]he doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

*Binder v. Coldwell Banker Real Est. LLC*, 2025 WL 1248812, at *1 (3d Cir. April 30, 2025).

Plaintiff's claims against Covert and Hilton in this action were the subject of a prior action between them. These claims were dismissed on the merits with prejudice and the dismissal was affirmed on appeal. Thus, res judicata bars the claims asserted against them.

As a result, the following claims against Covert and Hilton will be dismissed with prejudice: that they (1) denied Plaintiff access to the law library and law books; (2) destroyed and withheld his mail; (3) open, read and photocopied Plaintiff's mail; (4) subjected Plaintiff to psychological torture while in the HD Unit with the use of artificial light and sound; (5) negligently created customs and were negligent in failing to remedy violations and supervising subordinates; (6) usurped a fabricated booking fee of $25.00; (7) engaged in religious discrimination by denying a feast at the end of Ramadan; and (8) retaliated against him by transferring him to another correctional institution without a hearing.[8]

Plaintiff also asserts a claim against Covert for denial of medical care. (ECF No. 34 ¶ 41.) Defendants note that the sole allegations against him are that he knew Defendant Parra was abusing Plaintiff and refused to intervene, neglected him, and refused medical care. Defendants contend that these bare allegations fail to state a civil rights claim against Covert for deliberate indifference to a serious medical need.

---

[8] Because Plaintiff's claims are barred, analysis of other grounds for the dismissal of these claims need not be addressed.

To state a claim that a defendant delayed or denied medical care, a plaintiff must allege (1) a serious medical need and (2) that the defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For a pretrial detainee, whether the defendant was deliberately indifferent is an objective, not subjective, inquiry. *Conley-Reifer v. Butler Cty. Prison*, Civ. A. No. 23-1804, 2024 WL 5347837, at *9 (W.D. Pa. Nov. 12, 2024). "[M]ere disagreement between the prisoner and medical personnel over the proper course of treatment" falls short of establishing deliberate indifference. *Montanez v. Price*, 125 F.4th 127, 141 (3d Cir. 2025).

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g.*, *id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, a supervisor-defendant cannot be held

liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

The Second Amended Complaint alleges the Parra put Plaintiff on a suicide watch despite the fact that he was not suicidal. Plaintiff fails to allege that Covert, who is not a medical professional, had any duty to second guess Parra's decision. As noted in *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004), when a prisoner is under the care of a medical professional, a non-medical prison official generally will be justified in relying on the professional's judgment unless there is actual knowledge or reason to believe that a prisoner is being mistreated.

Plaintiff cites no facts that would support a claim of deliberate indifference against Covert. His bare conclusory statements provide no basis to hold Covert accountable for Parra's medical decisions or to find that he was not justified in relying on her medical judgments. As Plaintiff has

already amended his complaint twice, the Court concludes that it would be futile to permit another amendment. Therefore, this claim will be dismissed with prejudice.

### B.   **Claims against Zarilla**

According to the Second Amended Complaint in this case, Zarilla deliberately withheld Plaintiff's mail, including correspondence from his attorney, between January and July 2020. Plaintiff's asserts that this conduct violated his free speech rights under the First Amendment, his Sixth Amendment right to counsel and also prejudiced his ability to consult with his counsel in connection with his criminal case.

As reflected in the opinion issued by the Court of Common Pleas of Lawrence County at Case No. 10386 of 2020 against Covert, Hilton, and Zarilla as described above, the court sustained Zarilla's preliminary objections. As the court noted, other than naming Zarilla in the caption, the Amended Complaint made no references to any actions on inactions on his part, and therefore, there were no facts pleaded that could be construed to support a claim against him. (ECF No. 98-2 at 16.)

Even so, the court's opinion addressed and dismissed claims related to Plaintiff's allegation in the Amended Complaint that "Defendants" withheld Plaintiff's legal mail. In addition, Plaintiff's original complaint against Hilton, Covert, and Zarilla alleges that all three defendants, including Zarilla, intentionally and wrongfully seized and withheld his mail, including his legal mail. (*Id.* at 2-3.) Moreover, in a "Supplemental Complaint" filed after the Amended Complaint, Plaintiff states that his action was aimed at Zarilla, among others, and asserts that "Defendants" violated his First Amendment rights "by not giving Plaintiff his mail deliberately" and violated his Eighth Amendment right to effective assistance of counsel because his attorney's mail was not provided to him. (ECF No. 98-1 at 17, 21.)

Zarilla asserts that the claims against him are barred by the doctrines of res judicata and collateral estoppel. As it relates to res judicata, Zarilla's preliminary objections were sustained, and he was dismissed because the Amended Complaint included no facts or allegations against him. Thus, this disposition was not directly on the merits. At the same time, both the original complaint and the Supplemental Complaint expressly asserted facts and raised claims against Zarilla, thus demonstrating that the claims against Zarilla could have been brought in the Amended Complaint since Plaintiff clearly knew about them and raised them both in the original complaint and in the supplemental complaint. Therefore, the claims against Zarilla are barred by res judicata. *See Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) (holding that, in order to maintain a claim in the present action, the plaintiff had to explain why it could not have been brought in the prior action).

Zarilla alternatively argues that Plaintiff's claims are barred by collateral estoppel. Collateral estoppel promotes "judicial economy, predictability, and freedom from harassment." *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir. 1988.) This doctrine is appropriately applied to foreclose claims when (1) an issue decided in a prior action is identical to one in a subsequent action; (2) there was a final judgment on the merits in the prior action; (3) the party against whom the doctrine is asserted was a party in the prior action; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. *Holtec Int'l v. ARC Machines, Inc.*, Civ. A. No. 17-397, 2021 WL 211150, at *2 (W.D. Pa. May 25, 2021).

Regardless of whether any allegations were specifically directed to Zarilla's conduct in the Amended Complaint, it is uncontroverted that the Court of Common Pleas dismissed Count II, which alleged that "defendants" maliciously withheld Plaintiff's mail. This is the same claim raised by Plaintiff in this case. There has been a final judgment on the merits of this claim, and

14

Plaintiff was a party to the prior action and had a fair and full opportunity to litigate it. As such, collateral estoppel bars Plaintiff's claims against Zarilla, and they will be dismissed with prejudice.

## C.    Claims against Lawrence County Prison Board Members

Plaintiff asserts claims against Lawrence County Prison Board members Dominick Motto, Loretta Spielvogel, Qualiero Perry, Morgan Boyd, Gettings, Daniel Vogler, and Joshua D. Lamancusa[9] for: (1) their "neglect to treat [Plaintiff's] serious medical needs"; (2) their "direct/personal involvement in all of the violations which occurred to [Plaintiff]" in the Lawrence County Jail; (3) the illegal usurpation of the $25 booking fee; (4) their negligence in supervising Covert and Hilton; and (5) their deliberate indifference to information that Plaintiff's rights were being violated. (ECF No. 34 ¶¶ 43-49.)

Plaintiff's claim of racketeering under 18 U.S.C. § 1961 with respect to the booking fee claim is legally deficient. Section 1961(1) provides an exhaustive list of criminal acts that constitute "racketeering activity" under the statute. Collecting interest on an illegally usurped jail booking fee is not one of the specified activities. Moreover, to the extent that Plaintiff attempts to bring a civil action under RICO, he has failed to plead facts that support such a claim. He has failed to allege any facts as to the requisite elements of a RICO, that is, that these Defendants were conducting an enterprise through a pattern of racketeering activity. *See Tapp v. Proto,* 718 F. Supp. 2d 598, 625 (E.D. Pa. 2010). No such pattern is pleaded here; indeed, Plaintiff's claim is limited to the booking fee assessed against him. Accordingly, this claim will be dismissed with prejudice.

---

[9] Plaintiff also purports to bring these claims, as well as "abuse of process," (ECF No. 34 ¶ 45) against "Lamancusa's investigator Vincent Martwinski," (*id.* ¶ 43) but the Second Amended Complaint includes no factual allegations to support any plausible claims against him. The claims against him will be dismissed with prejudice.

As to the remaining § 1983 claims,[10] Plaintiff has failed to plead any plausible claims on which relief may be granted. As the Court previously explained, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right, *see, e.g.,* *Rode*, 845 F.2d at 1207, and the doctrine of respondeat superior does not apply under § 1983. *Id.*; *Iqbal*, 556 U.S. at 676. Plaintiff does not allege facts that would support a claim that any of these individual defendants had any personal involvement in the constitutional violations asserted. Notably, none of the individual board members had any supervisory power. *See Newman v. Burrows*, 2023 WL 4360554, at *4 (W.D. Pa. May 3, 2023) (explaining that "because the individual members of a Prison Board lack final policymaking or supervising authority to act alone, they cannot be held individually liable.") Per Pennsylvania statute, all actions of a prison board must be by the approval of a majority all the members of the board. 61 Pa.C.S. § 1732(a).

Accordingly, the claims against the individual Board members will be dismissed with prejudice.

### D.    Claims against Lamancusa

As it relates to Plaintiff's criminal prosecution, Plaintiff raises a host of claims against Lamancusa in his role as the District Attorney, including abuse of process, malicious prosecution, and violations of double jeopardy, due process, and speedy trial. These claims appear to stem

---

[10] It is unclear whether Plaintiff also intends to assert a state-law claim of negligence. To the extent he does, he cannot do so against these defendants because with exceptions not relevant here, employees of Commonwealth agencies acting within the scope of their duties enjoy immunity for their negligent acts. *See* 42 Pa. Cons. Stat. § 8522; *Rosa-Diaz v. Dow*, 683 Fed. Appx. 103, 107 n.8 (3d Cir. 2017).

16

largely from the charges against Plaintiff, the evidence presented at Plaintiff's preliminary hearing, and various other matters related to Plaintiff's prosecution and conviction.[11]

As the Lawrence County Defendants correctly assert, Lamancusa has absolute prosecutorial immunity for the actions he took as prosecutor during the judicial process.(ECF No. 98 at 19-20.)[12] A prosecutor is entitled to absolute immunity for his work that is "intimately associated with the judicial phase of the criminal process," including conduct in beginning a prosecution at probable cause hearings. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (citations omitted); *see also Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir. 1992.) As Defendants note, it is the function of the act that the prosecutor is performing, not his motivation. *See, e.g.*, *Rose v. Bartle,* 871 F.2d 331, 337 (3d Cir. 1989.)[13]

Thus, the claims against Lamancusa based on his actions as a prosecutor will be dismissed with prejudice.

As to the claim stemming from Lamancusa's statement characterizing Plaintiff as "depraved," Plaintiff has failed allege sufficient facts to support a plausible claim of constitutional defamation. The Court of Appeals recently has explained:

> To state a constitutional tort under the Fourteenth Amendment, a plaintiff must allege "defamation ... occur[ing] in the course of or [ ] accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989). That is, "a plaintiff must

---

[11] Plaintiff also asserts a claim of retaliatory transfer against Lamancusa concerning his transfer from the Lawrence County Jail to S.C.I. Greene (ECF No. 34 ¶¶ 70-73); however, he fails to assert any facts that would support a finding of Lamancusa's personal involvement in this transfer. This claim will be dismissed with prejudice.

[12] Plaintiff does not respond to this argument.

[13] Moreover, as it relates to Plaintiff's criminal conviction, his claim is barred by the holding of *Heck v. Humphrey,* 512 U.S. 477 (1974). As his conviction has not been reversed, he may not recover damages for any alleged constitutional violation.

show a stigma to his reputation plus deprivation of some additional right or interest." *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008) (quotations omitted). "We have referred to this as the 'stigma-plus' test." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).

*Spone v. Reiss*, 2025 WL 670968, at *5 (3d Cir. March 3, 2025).

As an initial matter, the Court takes judicial notice of several previous actions commenced by Plaintiff which are relevant to the disposition of this claim. As Defendants note, Plaintiff commenced a lawsuit against State Representative Aaron Bernstine[14] in which he alleged claims of constitutional defamation, abuse of process, violation of Plaintiff's due process rights and a Fifth Amendment violation for his right to a fair trial. According to Plaintiff, these claims stemmed from Rep. Bernstine's statements about "Markie's Law." Plaintiff later attempted to join Lamancusa as a defendant. The Court screened the claims, found that the complaint failed to state federal causes of action and dismissed them with prejudice, declined to exercise supplemental jurisdiction over the state-law claims, which were dismissed without prejudice, and based on these findings, found that Lamancusa's joinder would be futile.[15]

As a result, Plaintiff's claims that are based on "Markie's Law" and stigma-plus defamation were previously litigated and dismissed with prejudice. While Lamancusa was not a party to the case filed in the Middle District, collateral estoppel bars these claims in this proceeding. These issues were raised in a prior action, there was a final judgment on the merits, and Plaintiff, who

---

[14] This lawsuit was filed in the United States District Court for the Middle District of Pennsylvania at Case No. 1:21-cv-72. The docket entries are attached to Defendants' Brief in this case at ECF No. 98-5.

[15] Plaintiff's attempt to assert the same claims about defamation and "Markie's Law" in the Commonwealth Court (Docket Number 167 MD 2021) were similarly dismissed with prejudice (ECF No. 98-6.)

was a party in that action, had a full and fair opportunity to litigate these issues. *See Holtec Int'l, supra.*

Even if Plaintiff's claims were not barred, they are unavailing. In an apparent attempt to show that Lamancusa's statement caused him the required harm, Plaintiff alleges that the use of the word "depraved" caused Plaintiff to be improperly recommitted to the state correctional system and to be recommended for a "batterers group" at S.C.I. Forest, which recommendation resulted in loss of privileges when Plaintiff refused to participate therein. (ECF No. 34 ¶¶ 64-66.)

As to the latter allegation, even if it was Lamancusa's statement that prompted the recommendation from the prison counselor, a loss of prison privileges does not implicate a right guaranteed by state law or the Constitution. With respect to the transfer, it was facilitated by the decision of the Pennsylvania Board of Probation and Parole, which determined that Plaintiff's violation of his parole required detention in a state facility. (ECF No. 98-8.) It is not plausible that the Pennsylvania Parole Board took action against Plaintiff based on a descriptive statement at a press conference and not based on the pending charges against Plaintiff. Indeed, the Lawrence County Defendants attach to their motion a warrant and a notice of the Parole Board's decision to detain Plaintiff based on his pending charges. (ECF No. 98-8.)

Therefore, this claim will be dismissed with prejudice.

Finally, to the extent that Plaintiff attempts to assert an equal protection claim against Lamancusa, this claim must be dismissed as well. His allegations are nothing more than conclusory boilerplate. Plaintiff has asserted no facts that he was treated differently than other pre-trial detainees by Lamancusa. He fails to identify any similarly situated individuals who were treated differently from him. Thus, Lamancusa is entitled to dismissal of this claim as well.

### E.    Other Claims

While Plaintiff also seeks declaratory relief regarding his incarceration at Lawrence County Jail, this claim is moot because he is no longer incarcerated there. Similarly, his claim for injunctive relief to stop "Markie's Law" from being enacted and for relief related to his treatment plan at SCI Forest are inappropriately raised in this proceeding, as neither the Department of Corrections nor state officials are parties to this proceeding.

### F.    Amendment

The Court of Appeals has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Because the deficiencies identified herein cannot be cured for all the reasons set forth above, it would be futile to permit Plaintiff to file an amended complaint.

## V.    Conclusion

For these reasons, the motion to dismiss of the Lawrence County Defendants (ECF No. 97) and the motion to dismiss of Zarilla (ECF No. 99) will be granted and all claims against these defendants will be dismissed with prejudice. Accordingly, this case will proceed only as to the claims against Parra.

An appropriate Order follows.

Dated:  March 23, 2026                                    BY THE COURT:

                                                         /s/ Patricia L. Dodge
                                                         PATRICIA L. DODGE
                                                         UNITED STATES MAGISTRATE JUDGE